UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK F. BELT, II,

    Plaintiff,

v.	Case No. 1:06-cv-672
   Hon. Robert Holmes Bell

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB), and granting his claim for Supplemental Security Income (SSI), finding that he was disabled as of December 11, 2003. For the reasons stated below, I recommend that this matter be reversed and remanded.

Plaintiff was born on January 9, 1970 and completed high school (AR 89, 105).[1] He alleged a disability onset date of November 2, 1996 (AR 89). Plaintiff had previous relevant employment as a mold setter in a factory (AR 100). Plaintiff identified his disabling conditions as uncontrolled sugar, high cholesterol, injured pancreas, "no energy," fatigue, and severe headaches (AR 99). Plaintiff filed an application for DIB on July 30, 2001 (AR 20). After administrative denial of the claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and

---

[1] Citations to the administrative record will be referenced as (AR "page #").

entered a decision denying these claims on January 12, 2004 (AR 20). After reviewing the matter, the Appeals Council issued an order of remand on August 31, 2004 (AR 20). On March 28, 2005, plaintiff filed an SSI claim (AR 20). This claim was consolidated with the DIB claim, and the ALJ heard both the DIB claim and the SSI claim on April 8, 2005 (AR 20, 610). In a partially favorable decision entered August 23, 2005, the ALJ denied the DIB claim, but found that claimant was disabled beginning December 11, 2003, and would be eligible for SSI providing that he met the non-disability requirements for those benefits (AR 20-36). This decision, which was later approved by the Appeals Council, became the final decision of the Commissioner.

Plaintiff filed the present action on September 15, 2006. The court remanded the case to the Commissioner on December 29, 2006, to locate and, if necessary, reconstruct, the missing claims file. The Commissioner found the missing material necessary to proceed, and the court re-opened the case on February 21, 2008. This matter is now before the court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court

does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

3

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

As previously discussed, the ALJ entered a partially favorable decision in this matter. Following the five step sequential evaluation, the ALJ initially found that plaintiff was insured for DIB through December 31, 2001, and had not engaged in substantial gainful activity since the alleged disability onset date of November 2, 1996 (AR 34). Second, the ALJ found that plaintiff had the following severe impairments: obesity; diabetes; mild osteoarthritis; mild degenerative changes of the lumbar spine; obstructive sleep apnea; depressive disorder; mild mental retardation; and status [post] motor vehicle accident on December 11, 2003 (AR 34). At the third step, the ALJ found that

4

plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 34). The ALJ decided at the fourth step that plaintiff's residual functional capacity (RFC) changed at the time of the motor vehicle accident.

From November 2, 1996 through December 10, 2003, the ALJ found that plaintiff had the following RFC:

> [F]or work at the sedentary exertional level. He could do no climbing. The claimant could only occasionally stoop, kneel, crouch, crawl or use foot controls. He could have no exposure to dangerous unprotected machinery or work at unprotected heights. The claimant had possible short periods of blurry vision two times per day and a decreased ability to read. He could only do simple unskilled work and had difficulty maintaining concentration. The claimant was unable to do work that involved frequent changes or adaptations, or work that required taking initiative. The claimant was unable to do work that involved meeting production quotas. He could only occasionally handle or finger with his right hand and had a decreased grip. The claimant needed a sit/stand option.

(AR 34). The ALJ found that plaintiff could not perform his past relevant work (AR 35).

Based on this RFC, the ALJ determined at step five that plaintiff could perform a significant range of sedentary work in Michigan, including the following jobs: hand packager (800 jobs); sorter (70 jobs); and inspector (300 jobs) (AR 35). Accordingly, the ALJ determined that plaintiff was not under a disability prior to December 11, 2003 and entered a decision denying benefits for that time period (AR 35-36).

As of December 11, 2003, the ALJ found that plaintiff had the following RFC:

> [F]or work at the sedentary exertional level. He can do no climbing. The claimant can only occasionally stoop, kneel, crouch, crawl or use foot controls. He can have no exposure to dangerous unprotected machinery or work at unprotected heights. The claimant has possible short periods of blurry vision two times per day and a decreased ability to read. He can only do simple unskilled work and has difficulty maintaining concentration. The claimant is unable to do work that involves frequent

5

>changes or adaptations, or work that requires taking initiative. The claimant is unable to do work that involves meeting production quotas. He can only occasionally handle or finger with his right hand and has a decreased grip. The claimant needs a sit/stand option. He needs to recline up to three times per week. The claimant needs to take a nap for up to one hour two times per week.

(AR 35). The ALJ found that plaintiff could not perform his past relevant work (AR 35).

Based on this RFC, the ALJ determined at step five that plaintiff could not make an adjustment to any work that exists in the national economy (AR 35). Accordingly, the ALJ determined that plaintiff was disabled beginning December 11, 2003 and entered a decision awarding benefits commencing on that date (AR 35-36).

### III.  ANALYSIS

The reason for plaintiff's appeal of this partially favorable decision is not entirely clear from his brief. Plaintiff demonstrated that he has been disabled since December 11, 2003. However, because plaintiff was insured for DIB only through December 31, 2001, the ALJ's decision forecloses plaintiff from receiving those benefits. While plaintiff has met the disability requirement to receive SSI payments, he must still demonstrate the non-disability requirements for SSI, which would be payable on or after his application for benefits in 2005. In this appeal, plaintiff seeks to have the court re-evaluate his condition as it existed prior to the December 11, 2003 automobile accident. If the ALJ finds that plaintiff was disabled before the accident, specifically on or before his last insured date of December 31, 2001, then plaintiff would be entitled to receive DIB, including past benefits. Presumably, the purpose of this appeal is to establish plaintiff's disability on or before December 31, 2001, which would enable him to receive DIB. Plaintiff raises three issues for review.

    **A. The evidence in the case record demonstrates the claimant**

**has an additional "severe" impairment of syrinx.**

First, plaintiff contends that he has a severe impairment of a syrinx.[2]  The ALJ noted the existence of the syrinx, citing an MRI from March 3, 2004 of the cervical and thoracic spine which revealed a syrinx (AR 30), and an MRI from May 11, 2005, which "revealed syrinx involving the cord throughout the cervical spine" (AR 27).  Plaintiff points out that while the ALJ's decision refers to the syrinx, he fails to perform an analysis of this medical condition.

Plaintiff's treating physician, Jeff Williamson, D.O., stated that plaintiff's medical workup following the automobile accident revealed the syrinx (AR 570).  In the doctor's words, "[t]his can explain why he was having headaches when we first started treating him since the Syrnix [sic] is a congenital problem according to his neurologist" (AR 570).  Plaintiff's neurologist, Farook J. Kidwai, M.D., stated that plaintiff's syringomelia starts in the upper cervical spine, goes all the way to the thoracic spine in the T7-8 region, and was not related to the automobile accident (AR 525).

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation.  *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment

---

[2] A syrinx is defined as "an abnormal cavity in the spinal cord in syringomyelia." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 1647. "Syringomyelia" is defined as "a slowly progressing syndrome in which cavitation occurs in the central segments of the spinal cord, generally involving the cervical region, but the lesions may extend up into the medulla oblongata (*syringobulbia*) or down into the thoracic region..." *Id.*

does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Here, the ALJ found that plaintiff suffered from a number of severe impairments (AR 34). Accordingly, the ALJ's failure to classify the syrinx as a severe impairment does not constitute error requiring reversal. *See Maziarz*, 837 F.2d at 244.

Furthermore, there is no evidence that plaintiff suffered any restrictions from this condition. While the neurologist, Dr. Kidwai, opined that plaintiff had the syrinx prior to the automobile accident, the doctor does not comment on any symptoms caused by this condition. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988). Even if the syrinx contributed to plaintiff's pre-accident restrictions, plaintiff was found to have the capacity to work with those restrictions. Furthermore, plaintiff provides no medical basis to support his contention that the syrinx caused additional balance problems prior to the accident. Accordingly, the ALJ's failure to discuss the syrinx as a severe impairment did not constitute error.

> **B.     The decision fails to properly consider the treating source statements under 20 C.F.R. §§ 404.1527(d)(2) and 404.927(d)(2).**

Next, plaintiff contends that the ALJ failed to properly review the opinion of his treating physician, Dr. Williamson, as required by § 404.1527. Plaintiff contends that the ALJ failed to consider the six factors relevant under that section, i.e., examining relationship, treatment relationship, supportability, consistency, specialty and other factors. Plaintiff's Brief at 7.

A treating physician's medical opinions and diagnoses are entitled to great weight in

evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. Williamson submitted a "Medical opinion regarding physical capacity for work" dated April 4, 2005 (AR 568-70). This opinion provided six categories in which the doctor could classify plaintiff's physical capacity to work: very heavy work; heavy work; medium work; light work; sedentary work; and, "unable to perform even sedentary work on a regular and continuous basis, i.e., eight hours a day, five days a week or an equivalent work schedule" (AR 568). Given these options, Dr. Williamson classified plaintiff as "unable to work" (AR 568). The doctor

supported this with a narrative of plaintiff's treatment from 1997 through May 2001, and then from December 23, 2003 through April 4, 2005 (AR 569).

After performing an extensive review of plaintiff's medical history (AR 22-27), the ALJ rejected Dr. Williamson's[3] opinion with respect to plaintiff's condition prior to December 23, 2003 as not consistent with the record a whole (AR 30). On the other hand, the ALJ found that the doctor's opinion was consistent with the record as a whole, and gave that opinion controlling weight, as of December 23, 2003 (AR 30). The court concludes that the ALJ did not articulate a good reason for not crediting the doctor's opinion. *See Wilson*, 378 F.3d at 545. Given plaintiff's extensive medical record, and Dr. Williamson's rather lengthy narrative in support of his opinion, the ALJ had an ample record from which to explain how the doctor's opinion was not consistent with the record as a whole. Furthermore, Dr. Williamson's narrative does not draw a conclusions regarding plaintiff's ability to perform work after December 23, 2003. In the absence of any explanation from the ALJ, the choice of this date appears to be based upon the date of plaintiff's auto accident rather than any particular opinion expressed by Dr. Williamson. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Williamson's April 4, 2005 opinion.

### C.    The decision lacks articulation as to whether the claimant meets or equals the requirements of Listing 12.05(C).

Finally, plaintiff contends that the ALJ failed to articulate why he does not meet the requirements for mild mental retardation under Listing 12.05(C). Plaintiff contends that he meets the requirements of Listing 12.05C and should hve been found disabled at Step Three of the

---

[3] The ALJ refers to this treating physician as "Dr. Williams" (AR 30).

sequential evaluation.

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Listing 12.05 provides in pertinent part as follows:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*   \*   \*

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05C, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Here, the ALJ stated that plaintiff's impairments were "not 'severe' enough to meet or medically equal, either singly or in combination to Listing 12.05C or any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4" (AR 27). The court agrees with plaintiff that the ALJ's articulation is either inadequate or simply wrong.

In a mental examination performed on September 5, 2003, plaintiff achieved a verbal IQ of 70, a performance IQ of 75 and a full scale IQ of 70 (AR 441). Thus, he has not one, but two IQ scores that fall within the 60 through 70 range as required by Listing 12.05C. In addition, it appears that these deficits were apparent before plaintiff reached age 22, as evidenced by his enrollment as a special education student from 7th through 12th grade (AR 105, 409-11). In the September 2003 mental examination, plaintiff was given the Peabody Picture Vocabulary Test - Revised, which indicated a percentile ranking of 1 and a mental age of 12 years and 5 months (AR 441). Finally, plaintiff appears to have at least one physical or mental impairment that imposed an additional and significant work related limitation of function. Prior to December 11, 2003, the ALJ found that plaintiff suffered from six severe impairments in addition to mild mental retardation, including: obesity; diabetes; mild osteoarthritis; mild degenerative changes of the lumbar spine; obstructive sleep apnea; and depressive disorder (AR 34). These impairments imposed such significant limitations on plaintiff so as to limit him to only 1,170 jobs in the Lower Peninsula of Michigan (AR 35).

Based on this record, plaintiff appears to have met the requirements of Listing 12.05C. Given the record in this case, the ALJ's cursory review of Listing 12.05C is clearly inadequate. "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of whether plaintiff meets the requirements of Listing 12.05C.

**IV.  Recommendation**

For these reasons, I respectfully recommend that the Commissioner's decision be **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate (1) Dr. Williamson's April 4, 2005 opinion, and (2) whether plaintiff meets the requirements of Listing 12.05C.


Entered: February 11, 2009                         /s/ Hugh W. Brenneman, Jr.
                                                   Hugh W. Brenneman, Jr.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).